# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 3:17-bk-00701 (JAF) |
| | Chapter 11 |
| RJR TOWING, LLC, | |
|         Debtor. | Jointly Administered with |
| | |
| NRMT, LLC | Case No.: 3:17-bk-00702 (JAF) |
|         Debtor | |

APPLICABLE DEBTORS:

| | |
|---|---|
| RJR TOWING, LLC, | Case No.: 3:17-bk-00701 (JAF) |
|         Debtor. | |
| NRMT, LLC | Case No.: 3:17-bk-00702 (JAF) |
|         Debtor | |

## JOINT PLAN OF REORGANIZATION OF
## RJRAMDHAN GROUP, LLC, RJR TOWING, LLC, AND NRMT, LLC

WILCOX LAW FIRM
/s/ *Robert Wilcox*
Robert D. Wilcox
Fla. Bar No. 0755168
814 N. Hwy A1A, Suite 202
Ponte Vedra Beach, FL 32082
Telephone: (904) 405-1250
rw@wlflaw.com

Attorneys for the Debtors

# INTRODUCTION

Debtors RJRAMDHAN GROUP, LLC ("Group"), RJR Towing,  LLC ("RJR"), and NRMT, LLC ("NRMT") (collectively "Debtors") propose the following plan of reorganization (as may be amended from time to time, and including all addenda, exhibits, schedules, and other attachments hereto, as any of the same may be amended from time to time, and as the "Plan" as defined in Article I below), pursuant to the provisions of chapter 11 of the Bankruptcy Code (defined in Article I below). The Plan is being filed concurrently in each of the Debtors' cases.

For a discussion of the Debtors' history, businesses, operations, assets, and liabilities and for a summary and analysis of the Plan, reference should be made to the *Disclosure Statement in Connection with Joint Plan of Reorganization of RJRamdhan Group, LLC, RJR Towing, LLC, and NRMT, LLC* filed contemporaneously with this Plan (the "Disclosure Statement"). The Debtors are proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

# ARTICLE I
# DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan. Such meanings shall be applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in interpreting the Plan.

1.1     "Administrative Convenience Claim" means any Allowed Unsecured Claim that is in an amount of $200.00 or less.

1.2     "Administrative Expense" means (a) any cost or expense of administration under Sections 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense on or before the applicable Administrative Expense Claims Bar Date or other applicable deadline established by the Bankruptcy Court, including (i) any actual and necessary costs and expenses of preserving the Estates or operating the business of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Post-Petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors-in-Possession in the ordinary course of their businesses, (iii) any payment required to be made to cure a default under an Assumed Contract, including any Cure Claim, to the extent Allowed by a Final Order of the Bankruptcy Court, (iv) any Claim granted administrative expense priority status by a Final Order of the Bankruptcy Court, (v) any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Post-Petition, and (vi) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Bankruptcy Code § 330(a) or § 331 (including any amounts held back pursuant to an order of the Bankruptcy Court); and (b) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930.

1.3     "Administrative Expense Claim" means any Allowed Claim for the payment of any Administrative Expense.

1.4    "Administrative Expense Claims Bar Date" means, unless otherwise ordered by the Bankruptcy Court, the day established by the Federal Rules of Bankruptcy Procedure as the last day for filing an application or other Bankruptcy Court-approved pleading for an Administrative Expense Claim.

1.5    "Affiliate" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

1.6    "Affiliated Reorganized Debtors" means (a) Metro Towing of Florida, LLC, as of the merger of RJR and NRMT on the Effective Date, and (b) Group.

1.7    "Allowed Claim" means and includes, a right against the Debtor within the meaning of 11 U.S.C. § 101(5) in respect of which a proof of claim has been filed with the Bankruptcy Court within the period of limitation fixed by Rule 3003 or scheduled in the list of creditors prepared and filed with the Bankruptcy Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Rule 3001 or an order of the Bankruptcy Court or local rule, and any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending. When the context so requires, Allowed Claim shall include Disputed Claims to the extent such Disputed Claims become allowed after the Effective Date. Unless otherwise specified in the Plan or in a Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include (a) interest on the amount of such Claim accruing from and after the Filing Date if such claim is an unsecured claim or a bifurcated claim, (b) punitive or exemplary damages or (c) any fine, penalty or forfeiture.

1.8    "Allowed Secured Claim" means an Allowed Claim that is also a Secured Claim, to the extent it is secured by an interest of the Debtors in property of the estate. The amount of any Allowed Secured Claim shall be determined as of the date of the first confirmation hearing, or on such other date as the Court shall determine or on which the parties shall agree

1.9    "Allowed Amount" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order. No amount shall be Allowed for or on account of punitive damages, penalties, or post-petition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court.

1.10    "Allowed Unsecured Claim" is an unsecured claim that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to: (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, which claim has not been disputed, reduced or expunged.

1.11    "Anniversary Date" means the calendar date (or first business day thereafter) that falls one year after the Effective Date and the same calendar date (or first business day thereafter) of each succeeding calendar year.

1.12    "Avoidance Action" means a Cause of Action which any Debtors may assert under Section 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

1.13    "Ballot" The form or forms distributed to Claimants in impaired Classes on which such Persons may indicate the acceptance or rejection of the Plan.

1.14    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 1101 et seq., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.15    "Bankruptcy Court" means either the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, having jurisdiction over the Reorganization Case or, to the extent the reference is withdrawn, the District Court.

1.16    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Reorganization Case, together with all amendments and modifications to the extent applicable to the Reorganization Case.

1.17    Bifurcated Claim: An Allowed Claim that is in part an unsecured claim and in part a secured claim.

1.18    "Business Day" means any day other than a Saturday, Sunday, or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

1.19    "Cases" The Chapter 11 cases of the Debtors.

1.20    "Cash" means lawful currency of the United States of America and its equivalents.

1.21    "Causes of Action" means any and all of the Debtors' or the Estates' actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether known or unknown, in law, equity, or otherwise, including (a) all Avoidance Actions; and (b) any and all other claims or rights of the Debtors of any value whatsoever, at law or in equity, against any Creditor or other third party.

1.31.1    "Claim" shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code.

1.22    "Class" means a group into which Allowed Claims or Allowed Interests are divided pursuant to the Plan.

1.23    "Confirmation" or "Confirmation of the Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

1.24    "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

1.25    "Confirmation Hearing" means the hearing(s) which shall be held before the Bankruptcy Court in which the Debtors shall seek Confirmation of the Plan.

1.26    "Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.27    "Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

1.28    "Creditor" shall have the meaning ascribed to such term in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against the Debtors or Holder of any Claim against Property of the Debtors as set forth in Section 102(2) of the Bankruptcy Code.

1.29    "Debtors-In-Possession" means the Debtors in their capacities as provided under Section 1101(1) of the Bankruptcy Code, and with the status and rights conferred by Sections1107 and 1108 of the Bankruptcy Code.

1.30    "Debtors" mean RJRamdhan Group, LLC, RJR Towing, LLC, and NRMT, LLC.

1.31    "Disclosure Statement" means the disclosure statement (including all annexes, exhibits, and schedules attached thereto or referenced therein), as such disclosure statement may be amended or modified from time to time for Plan approval, whether conditional or final, by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.32    "Disclosure Statement Hearing Order" means one or more Orders of the Bankruptcy Court conditionally (and/or finally) approving the Disclosure Statement as containing "adequate information," as being otherwise in accordance with Section 1125 of the Bankruptcy Code, and

scheduling such deadlines, hearings, and addressing other matters as the Bankruptcy Court may deem appropriate.

1.33    "Disputed Claim" means a Claim that has not been Allowed by a Final Order of the Bankruptcy Court as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Bankruptcy Court, or (3) granted in whole or part by a Final Order of the Bankruptcy Court, and a Claim shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, if (A) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent, or unliquidated or (B) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

1.34    "Disputed Claims Reserve" shall mean the reserve of Cash to be established on and maintained following the Effective Date by the Affiliated Reorganized Debtors in an amount sufficient to satisfy payments on account of any Disputed Claims that have not been withdrawn or determined as of the Effective Date, and subsequently any Distribution Date.

1.35    Distributions: The cash or cash equivalents to be distributed to holders of Allowed Claims under the Plan.

1.36    "Distribution Date," means, as context requires, the date (a) for payments to be made on the Effective Date or (b) such other dates upon which Distributions of Property are to occur under the Plan.

1.37    "District Court" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question, including the Bankruptcy Court.

1.38    Effective Date: The Effective Date of the Plan shall be the earliest of (a) that date which is twenty days after the date upon which the Confirmation becomes a final order, or (b) such other earlier date after the entry of this Confirmation Order as the Debtor may elect, so long as no stay of the Confirmation Order is in effect. Notwithstanding the foregoing, if the Effective Date falls on a weekend or legal holiday, the Effective Date shall be deemed to be the next date which is not a weekend or legal holiday.

1.54.1    "Entity" has the meaning ascribed in Section 101(15) of the Bankruptcy Code.

1.39    "Equity Interest(s)" means any equity interest in the Debtors held prior to the Effective Date.

1.40    "Estates" means the estates created with respect to these Cases pursuant to 11 U.S.C. § 541.

1.41    "Estimated Amount" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against a Debtors which is Contingent, unliquidated or disputed, for the purpose of: (a) allowance under Section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of the Plan pursuant to Section 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, Section 1129(b)(1) and (2) of the Bankruptcy Code.

1.42    "Exit Capital Contribution" means the $15,000 payment to be made by Lily Ramdhan to Group on the Effective Date in exchange for the equity interests in Group.

1.43    "Final Order" means an Order, the implementation, operation, or effect of which has not been stayed and as to which Order (or any revision, modification, or amendment thereof)

the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

1.44    "Governmental Unit" means any foreign, provincial, federal, state, local, or municipal (a) government, (b) governmental agency, (c) governmental commissions, (d) governmental department, (e) governmental bureau, (f) governmental ministry, and/or (g) governmental entity.

1.45    "Group's Real Property" means the improved real property owned by Group and located at 2060 West 21st Street, Jacksonville, FL 32209.

1.46    "Guarantors" means any party, individual or corporate, that has signed a Guaranty agreement or guaranty provision for any debt associated with a Claim.

1.47    "Holder" means an Entity holding a Claim or Equity Interest.

1.48    "Holley Claim" shall mean the claims, as allowed, of Onis L. Holley, St. Johns Mortgage Management, Inc., Great Southern Peterbilt, Inc., and GSP Leasing.

1.49    "Holley Parties" shall mean Onis L. Holley, St. Johns Mortgage Management, Inc., Great Southern Peterbilt, Inc., and GSP Leasing.

1.50    "Impaired" means impaired within the definition of Section 1124 of the Bankruptcy Code.

1.51    "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547,548, or 549 of the Bankruptcy Code shall not constitute a Lien.

1.52    "Ordinary Course of Business Administrative Claims" means those Allowed Expense Claims entitled to priority under Section 507(a)(2) and 503(b)(1) that arise and are incurred by the Debtors in the ordinary course of the operation of their businesses and represent liabilities incurred after the Petition Date, to the extent the Holders of such Administrative Claims have continued to do business with the Debtors on reasonable credit terms after the Petition Date, but not including any claim for personal injury or property damage.

1.53    "Order" means an order or judgment of a court.

1.54    "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity of whatever kind, whether or not for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

1.55    "Personal Injury and Property Damage Post-Petition Claims" means those Allowed Claims that arise from accidents and other claims directly related to the Debtors' towing business operations after the Petition Date, including any claim for personal injury or property damage.

1.56     "Plan" means this Chapter 11 Plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.57    "Plan Documents" means any documents, attachments, and exhibits, as the same may be amended, modified, or supplemented from time to time that aid in effectuating the Plan, which documents, attachments, and exhibits that may be filed by the Debtors with the Bankruptcy Court.

1.58    "Priority Claim" means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

1.59    "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

1.60    "Projections" means those pro forma financial projections attached as Exhibits to the Disclosure Statement, as may be supplemented, amended, or modified prior to or at the Confirmation Hearing.

1.61    "Pro Rata" or "Pro Rata Share" means the same proportion or ratio that an Allowed Claim in a particular Class bears to the total amount of all Allowed Claims in such Class or Classes as provided under the Plan.

1.62    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rule 3001 or 3002.

1.63    "Property" means "property of the estate" as set forth in Section 541 of the Bankruptcy Code.

1.64    "Reorganization Case" or "Bankruptcy Case" means the above-captioned Chapter 11 cases for the Debtors that was filed on the Petition Date.

1.65    "Reorganized Towing Debtors" means Metro Towing of Florida, LLC  (or "Metro of Florida"), as of the merger of RJR and NRMT on the Effective Date.

1.66    "Reorganized Group" means Group, as of the Effective Date.

1.67    "Schedules" means the Schedules, Statements, and Lists filed by the Debtors with the Bankruptcy Court in the Reorganization Cases pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

1.68    "Secured Claim" means any Claim that is (a) secured in whole or part, as of the Petition Date, by a Lien which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but in either case only to the extent of the value of the Property securing any such Claim, or to the extent of the amount subject to setoff, as the case may be.

1.69    "Setoff" means any right of a Creditor to offset a mutual debt owing by such Creditor and any right of the corresponding Debtors to offset a mutual debt owing by a Debtors to a Creditor against a Claim of that Debtors, including, without limitation, such rights under Section 553 of the Bankruptcy Code.

1.70    "Statutory Fees" means any fees or charges assessed against the Debtors' Estate under Section 1930, Chapter 12 of Title 28 of the United States Code.

1.71    "Unimpaired" means any Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.72    "Unsecured Claim" means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to: (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

2.1    Administrative Expense Claims.

Administrative Expense Claims shall include, among other amounts entitled to administrative status under Section 503, (i) the costs and expenses incurred in the operation of the business of the Debtors, including Ordinary Course of Business Administrative Claims, (ii)

Allowed Claims for reasonable fees and out of pocket expenses of professionals retained in the Reorganization Case with the approval of the Bankruptcy Court, including counsel for Debtors, and Debtors' financial advisors ("Professional Fee Claims"), and (iii) Administrative Expense Claims Allowed under Section 503(b)(3)(F).

(1)     Except as provided below, each Holder of an Administrative Expense Claim shall, in full and final satisfaction of such Allowed Administrative Expense Claim, be paid in full on the later to occur of the Effective Date or the date on which an Administrative Expense Claim shall become an Allowed Claim or in such other amount and on such other terms and conditions as may be agreed between the Holder of such Administrative Expense Claim and the Debtors.

(2)     Administrative Expense Claims are not classified and are to be treated in accordance with the Bankruptcy Code and the Holders of Administrative Expense Claims are not entitled to vote on the Plan.

2.2     Priority Tax Claims.

2.2.1 Priority Tax Claims are Claims of Governmental Units for taxes that are not Secured Claims and which are entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.2.2 Each Allowed Priority Tax Claims will be paid by the applicable Debtor  in full through  deferred Cash payments with the principal amount of such Allowed Priority Tax Claims amortized and payable in equal annual installments over five (5) years from the order of relief, and in such case interest shall accrue on the unpaid balance commencing on the Effective Date.

2.2.3 Priority Tax Claims are not classified, are to be treated as required by the Bankruptcy Code, and the Holders of such Claims are not entitled to vote on the Plan.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Claims other than Allowed Administrative Expense Claims and Allowed Priority Tax Claims are classified for all purposes pursuant to this Plan as follows in the following classes:

3.1     NRMT-1 – Beacon Funding. Class NRMT 1 consists of the Allowed Secured Claim of Beacon Funding.

3.2     NRMT 2 – Rapid Capital Finance, LLC.  Class NRMT 2 consists of the Allowed Secured Claim of Rapid Capital Finance, LLC.

3.3     NRMT 3 – Internal Revenue Service. Class NRMT 3 consists of all Allowed Secured Claims of the Internal Revenue against NRMT.

3.4     NRMT 4 - General Unsecured Claims against NRMT.  Class NRMT 4 consists of all Allowed Unsecured Claims against NRMT.

3.5     NRMT 5 – Personal Injury and Property Damage Post-Petition Claims Against NRMT. Class NRMT 5 consists of all Allowed Personal Injury and Property Damage Post-Petition Claims against NRMT.

3.6 <u>NRMT 6-Convenience Class</u>. Class NRMT-6 consists of (i) the Holders of Allowed Unsecured Claims against NRMT in an amount of $200.00 or less, and (ii) the Holders of Allowed Unsecured Claims who elect to reduce such Allowed Unsecured Claims to $200.00.

3.7 <u>RJR 1 – Ally Financial</u>. Class RJR 1 consists of the Allowed Secured Claim of Ally Financial, secured by a 2012 F450 truck.

3.8 <u>RJR 2 – Capital City Bank</u>. Class RJR 2 consists of the Allowed Secured Claim of Capital City Bank, secured by a 105 F350 truck.

3.9 <u>RJR 3 – Ford Motor Credit</u>. Class RJR 3 consists of any Allowed Secured Claim of Ford Motor Credit, secured by one or more Ford trucks.

3.10 <u>RJR 4 – Great American Financial</u>. Class RJR 4 shall consist of any Allowed Secured Claim of Great American Financial, secured by Hunter Tire Changer, a Hunter Wheel Balancer, and a Hunter Trick Aligner.

3.11 <u>RJR 5 – Holley Parties</u>.  Class RJR 5 consists of all Allowed Secured Holley Claims against RJR, secured by various trucks identified on Exhibit 2.

3.12 <u>RJR 6- General Unsecured Claims against RJR</u>. Class RJR 6 consists of all Allowed General Unsecured Claims against RJR.

3.13 <u>RJR 7- Personal Injury and Property Damage Post-Petition Claims Against RJR</u>. Class 5 consists of all Allowed Personal Injury and Property Damage Post-Petition Claims against RJR.

3.14 <u>RJR 8- Convenience Class</u>. Class RJR 8 consists of (i) the Holders of Allowed Unsecured Claims against RJR in an amount of $200.00 or less, and (ii) the Holders of Allowed Unsecured Claims against RJR who elect to reduce such Allowed Unsecured Claims to $200.00.

3.15 <u>Group 1-Duval County Tax Collector</u>. The class consists of the prepetition real estate taxes for the 2016 tax year owed by Group, secured by Group's Real Property.

3.16 <u>Group 2- Holley Parties</u>.  The class consists of all Allowed Secured Holley Claims against Group, secured by Group's Real Property and certain equipment owned by Group.

3.17 <u>Group 3-Arwood Waste & Demolition</u>. The class consists of the allowed Secured Claim of Arwood Waste & Demolition.

3.18 <u>Group 4- Retus Pension and Profit Sharing, Inc.</u> The class consists of the of the Allowed Secured Claim of Retus Pension and Profit Sharing, Inc. secured by a junior lien on Group's Real Property and certain of Group's Equipment.

3.19 <u>Group 5- Amir Asadi</u>. The class consists of the claim of Amir Asadi, secured by a junior lien on Group's Real Property and certain of Group's Equipment.

3.20 <u>Group 6- General Unsecured Claims against Group</u>. Class Group 6 consists of all Allowed General Unsecured Claims against Group.

3.21 <u>Intercompany Claims 1</u>. Claims between and among the Debtors.

3.22 <u>Equity 1- Interests in the Debtors</u>. Class Equity 1 consists of all membership or ownership interests in any of the Debtors.

<u>Extent of Classification</u>. A Claim is placed in a particular Class only to the extent such Claim falls within the description of that Class and only to the extent and amount that such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date. A Claim may be, and is, classified in other Classes to the extent any portion of the Claim falls within the description of such other Classes. Prior to the voting deadline established by order of the Bankruptcy Court, the Debtors may seek an order determining the foregoing classifications of creditors and equity interests pursuant to Rule 3013 of the Bankruptcy Rules.

**ARTICLE IV**
**TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS**

The following treatment of Allowed Claims pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of such respective Claims and Interests.

4.1 <u>NRMT-1 – Beacon Funding- Unimpaired</u>

On account of and in full satisfaction of the Allowed Secured Claim of Beacon Funding, on the Effective Date, Metro of Florida shall commence making equal monthly payments on the same terms as NRMT did prepetition.

4.2 <u>NRMT 2 – Rapid Capital Finance, LLC – Impaired</u>

The Reorganized Debtors shall make no payments on account of any Allowed Secured Claim of Rapid Capital Finance, LLC. Any liens asserted by Rapid Capital Finance, LLC shall be deemed null and void as of the Effective Date, and any receivables subject to such a lien shall be deemed to be "dealt with by the plan", as defined in 11 U.S.C. Section 1141(c).

4.3 <u>NRMT 3- Allowed Secured Claims of Internal Revenue Against NRMT- Impaired</u>

On account of and in full satisfaction of the Allowed Secured Claims of the Internal Revenue Service against NRMT, on the Effective Date, Metro of Florida shall commence making payments based on a three year amortization period and including interest at four percent per annum until the indebtedness is paid in full.

4.4 <u>NRMT 4 – General Non-Priority Unsecured Claims against NRMT- Impaired</u>

On account of and in full satisfaction of the General Non-Priority Unsecured Claims against NRMT,  Metro of Florida shall make a total of $25,000 in payments in five installments, commencing in months 12, 24, 36, 48 and 60 to the holders of Allowed Claims.

4.5    NRMT 5 – Personal Injury and Property Damage Post-Petition Claims Against NRMT- Impaired

Allowed Claims in this class shall be treated in the same manner as claims in Class NRMT 4, but only to the extent that there is an Allowed Claim in excess of any applicable insurance coverage for such claim.

4.6    NRMT 6-Convenience Class- Impaired

In full satisfaction of all Allowed Claims in the class, on the Effective Date, Metro of Florida shall make a payment of the lesser of (a) the Allowed Claim Amount, or (b) $50.00 to each holder of an Allowed Claim.

4.7    RJR 1 – Ally Financial- Impaired

On account of and in full satisfaction of the Allowed Secured Claims of Ally Financial, on the Effective Date, Metro of Florida shall commence making payments equal to the Allowed Secured Claim of Ally Financial, based on a five year amortization period, plus interest at five percent per annum until the indebtedness is paid in full.

4.8    RJR 2 – Capital City Bank- Impaired.
On account of and in full satisfaction of the Allowed Secured Claims of Capital City Bank, on the Effective Date, Metro of Florida shall commence making payments to Capital City Bank, pursuant to the parties' agreed upon terms as set forth in the Consent Order Granting Creditor Capital City Bank Adequate Protection (Doc. No. 116).

4.9 Class RJR 3 – Ford Motor Credit- Impaired.
On account of and in full satisfaction of the Allowed Secured Claims of Ford Motor Credit, on the Effective Date, Metro of Florida shall commence making payments equal to the Allowed Secured Claim of Ford Motor Credit, based on a five year amortization period, plus interest at five percent per annum until the indebtedness is paid in full.

4.10    Class RJR 4 – Great American Financial- Impaired.
On account of and in full satisfaction of the Allowed Secured Claims of Great American Financial, on the Effective Date, Metro of Florida shall commence making payments equal to the Allowed Secured Claim of Great American Financial, based on a five year amortization period, plus interest at five percent per annum until the indebtedness is paid in full..

4.11    Class RJR 5 – Holley Parties- Impaired.
On the Effective Date, the Holley Parties shall convey the trucks listed on Exhibit 2 to Metro of Florida. The Holley Parties shall have a valid first priority lien on the trucks listed on Exhibit 2 for the amounts they are owed under this paragraph. Metro of Florida shall carry insurance at the amounts required by the State of Florida, and the Holley Parties shall be loss payee. On account of and in full satisfaction of their secured claims against RJR and NRMT (to the extent there are any),

and consistent with the Stipulation and Agreement of Parties attached as Exhibit 1, on the Effective Date, Metro of Florida shall commence making regular equal monthly payments totaling $350,000.00 to be paid over thirty years plus interest at an annual rate of six percent, with a balloon payment of the remaining balance of the $350,000 (plus any accrued interest) on the tenth anniversary of the Effective Date. On the Effective Date, the Holley Parties shall convey the trucks listed on Exhibit 2 to Metro of Florida. The Holley Parties shall have a valid first priority lien on the trucks listed on Exhibit 2 for the amounts they are owed under this paragraph. Metro of Florida shall carry insurance at the amounts required by the State of Florida, and the Holley Parties shall be loss payee.

4.12    Class RJR 6- General Unsecured Claims against RJR- Impaired.
On account of in and in full satisfaction of all claims against the Debtors, Metro of Florida shall make a total of $25,000 in payments in five installments, commencing in months 12, 24, 36, 48 and 60 to the holders of Allowed Claims.

4.13    Class RJR 7- Personal Injury and Property Damage Post-Petition Claims Against RJR- Impaired.
Allowed Claims in this class shall be treated in the same manner as claims in Class RJR 6, but only to the extent that there is an Allowed Claim in excess of any applicable insurance coverage for such claim.

4.14    Class RJR 8- Convenience Class- Impaired.
In full satisfaction of all Allowed Claims in the class, on the Effective Date, Metro of Florida shall make a payment of the lesser of (a) the Allowed Claim Amount, or (b) $50.00 to each holder of an Allowed Claim.

4.15    Group 1-Duval County Tax Collector- Impaired.
Beginning on the Effective Date, Reorganized Group shall commence making payments equal to the Allowed Secured Claim of Duval County Tax Collector, based on a three year amortization period plus interest at five percent per annum until the indebtedness is paid in full. Any claim or lien based on unpaid 2016 real estate taxes other than the Tax Collector's, specifically including the claim of TLGFY, LLC shall be deemed null and void.

4.16    Group 2- Holley Parties-Impaired.
On account of and in full satisfaction of their secured claims against Group, and consistent with the Stipulation and Agreement of Parties attached as Exhibit 1, on the Effective Date, Reorganized Group shall commence making regular equal monthly payments totaling $850,000.00 to be paid over thirty years plus interest at an annual rate of six percent, with a balloon payment of the remaining balance of the $850,000 (plus any accrued interest) on the tenth anniversary of the Effective Date. The Holley parties shall have a valid first priority lien (a) in the amount of $750,000.00 on the Group Property  and (b) in the amount of $100,000.00 on (i) the equipment listed on the attached Exhibit 3 and (ii) subject to any preexisting liens of Great American, on the Hunter Tire Changer, Hunter Wheel Balancer, and Hunter Truck Alignment Equipment on which Onis Holley currently has a lien.

4.17    Group 3- Arwood Waste & Demolition-Impaired.
On account of and in full satisfaction of the Allowed Secured Claims in the class, on the Effective Date, Reorganized Group shall commence making payments equal to the Allowed Secured

Claim, based on a five year amortization period, plus interest at five percent per annum until the indebtedness is paid in full.

    4.18    Group 4- <u>Retus Pension and Profit Sharing, Inc.-Impaired</u>.

    On account of and in full satisfaction of the Allowed Secured Claims in the class, on the Effective Date, Reorganized Group shall commence making payments equal to the Allowed Secured Claim, based on a three year amortization period, plus interest at five percent per annum until the indebtedness is paid in full.

    4.19    Group 5- <u>Amir Asadi-Impaired.</u>

    On account of and in full satisfaction of the Allowed Secured Claims in the class, on the Effective Date, Reorganized Group shall commence making payments equal to the Allowed Secured Claim, based on a five year amortization period, plus interest at five percent per annum until the indebtedness is paid in full.

    4.20    Group 6- <u>General Unsecured Claims against Group-Impaired</u>. On account of in and in full satisfaction of all claims against the Debtors, Metro of Florida shall make a total of $5,000 in payments in five installments, commencing in months 12, 24, 36, 48 and 60 to the holders of Allowed Claims.

    4.21    <u>Intercompany Claims 1-Impaired but not entitled to vote</u>. Claims between and among the Debtors will be cancelled.

    4.22    <u>Equity 1- Interests in the Debtors-Impaired but not entitled to vote</u>. On the Effective Date, all interests in the class will be deemed cancelled.

### ARTICLE V
### MEANS FOR EXECUTION OF PLAN

    5.1    <u>Merger of the Debtors</u>. On the Effective Date, RJR and NRMT will merge into a new entity "Metro Towing of Florida, LLC" and shall execute any documents reasonably required for such merger. On the day after the Effective Date, Metro Towing of Florida, LLC will become a wholly-owned subsidiary of Group.

    5.2    <u>Plan Funding</u>. The Reorganized Towing Debtors will fund payments they are required to make under the Plan through the following: (a) Cash on hand on the Effective Date, (b) Cash generated and/or collected by the Reorganized Towing Debtors in the ordinary course of business on and after the Effective Date, and (c) to the extent necessary, a portion of the $15,000.00 Exit Capital Contribution. The Reorganized Group will fund payments it is to make under the Plan through the following: (a) Cash on hand on the Effective Date, (b) Cash generated and/or collected by Reorganized Group in the ordinary course of business on and after the Effective Date, including under leases with Metro Towing of Florida, LLC and with Tire Services, LLC, and (c) the Exit Capital Contribution.

    5.3    <u>Funding of Operations</u>. The Affiliated Reorganized Debtors' ordinary operations will be funded by Cash generated from operations and supplemented to the extent necessary by the Exit Funding.

5.4    <u>Management of the Reorganized Debtors</u>. On or after the Effective Date, the business and affairs of the Affiliated Reorganized Debtors shall be managed by Jonathan Ramdhan and Lily Ramdhan or such other person as Lily Ramdhan shall designate.

5.5    <u>Continued Corporate Existence</u>. Except for the mergers described in this Plan, the Affiliated Reorganized Debtors will continue to exist after the Effective Date as a corporate entity with all of the powers of a corporation under applicable law in the jurisdiction(s) in which the Debtors are organized or otherwise formed and pursuant to its articles of incorporation and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan or pursuant to any amended articles of incorporation or amended bylaws.

5.6    <u>Corporate Action</u>. All matters provided for under the Plan and/or the Plan Documents involving the organizational structure of the Debtors or action to be taken by, or required of the Debtors, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respect without any requirement for further action by the members of any such entities.

5.7    <u>Payments of Claims and Interests</u>. Except where the Plan contemplates deferred payment, delivery of securities, or some other form of Distributions of Property to be made by the Reorganized Debtors pursuant to the Plan, payments shall be made in Cash, by check, or by wire transfer.

5.8    <u>Addresses for Distributions to Holders of Allowed Claims</u>. Unless otherwise provided in the Plan, the Plan Documents, or a Final Order of the Bankruptcy Court, Distributions to be made under the Plan to Holders of Allowed Claims shall be made by first class United States mail, postage prepaid to: (a) the latest mailing address set forth in a Proof of Claim timely filed with the Bankruptcy Court by or on behalf of such Holders or (b) if no such Proof of Claim has been timely filed, the mailing address set forth in the Schedules. Neither the Debtors nor the Reorganized Debtors shall be required to make any other effort to locate or ascertain the address of the Holder of any Claim.

5.9    <u>Disputed Claims</u>. No payment shall be made to the holder of any Claim unless the Claim is an Allowed Claim.

5.8.1    <u>Claim Objection Deadline</u>. As soon as practicable, but in no event later than sixty (60) calendar days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Middle District of Florida.

5.8.2    <u>Prosecution of Objections</u>. On and after the Effective Date, the Reorganized Debtors shall have the authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims. On and after the Effective Date, the Reorganized Debtors shall be entitled to compromise or settle any Disputed Claim without approval of the Bankruptcy Court.

5.8.3    <u>Distributions Upon Allowance of Disputed Claims</u>. The Holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive Distributions from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim

becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made, without interest, in accordance with this Plan based upon the Distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No Holder of a Disputed Claim shall have any Claim against the Disputed Claims Reserve or the Reorganized Debtors with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no Holder of a Disputed Claim shall have any right to Distribution on such Disputed Claim except as provided in this Section.

     5.9    <u>Withholding of Taxes</u>. The Reorganized Debtors shall withhold from any Property distributed under the Plan any Property which must be withheld for foreign, federal, state, or local taxes payable with respect thereto or payable by the Person entitled to such Property to the extent required by applicable law.

     5.10    <u>Unclaimed Property</u>. Any Cash or other Property to be distributed under the Plan that remains unclaimed or otherwise not deliverable to the Person or Governmental Unit entitled thereto (including any non-negotiated checks) as of the later of (a) one (1) year after the Confirmation Date or (b) one hundred twenty (120) calendar days after the Distributions shall become vested in the Reorganized Debtors to be applied toward the funding of the Plan. In such event, such Person's or Governmental Unit's Claim shall no longer be deemed to be Allowed, and such Person or Governmental Unit shall be deemed to have waived its rights to such payments or Distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such Distribution and shall not participate in any further Distributions under the Plan with respect to such Claim.

     5.10    <u>Exoneration and Reliance</u>. Neither the Debtors nor any of the Affiliated Reorganized Debtors shall be liable to any Holder of a Claim or Equity Interest or other party with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date to the Effective Date in connection with: (a) the management or operation of the Debtors; (b) the implementation of any of the transactions provided for, or contemplated in, the Plan or the Plan Documents; or (c) the administration of the Plan or Property to be distributed pursuant to the Plan and the Plan Documents, other than for willful misconduct or gross negligence. The Debtors may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors, respectively, and such reliance shall conclusively establish good faith and the absence of willful misconduct. In any action, suit, or proceeding by any Holder of a Claim or Equity Interest or other party in interest contesting any action by, or non-action of, the Debtors as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party.

     5.11    <u>Effectuating Documents and Further Transactions</u>. The executive officers of the Debtors shall be authorized to execute, deliver, file, and/or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### ARTICLE VI
### EFFECT OF PLAN CONFIRMATION
    6.1    <u>Discharge and Injunction</u>.

    Except as otherwise explicitly provided in this Plan, to the fullest extent allowable under Section 1141(d) of the Bankruptcy Code, Confirmation of the Plan shall discharge the Debtors from

(1) all Claims against the Debtors or its Property (including, but not limited to, Claims based upon any act or omission, transaction, or other activity or security instrument or other agreement of any kind or nature occurring, arising, or existing prior to entry of the Confirmation Order or arising from any pre-Confirmation conduct, act, or omission of the Debtors) against, (2) liabilities of the Debtors or its Property (including, but not limited to, any liability of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code), (3) all Liens on any Property of the Debtors, (4) obligations of the Debtors regarding their Property, and Equity Interests in the Debtors or the Property of the Debtors, whether known to, unknown, or knowable by the Holder thereof, either directly or derivatively through the Debtors, against successors and assigns of the Debtors, based on the same subject matter as any Claim or Equity Interest, in each case regardless of whether or not a Proof of Claim or Proof of Equity Interest was filed, whether or not Allowed and whether or not the Holder of the Claim or Equity Interest voted on or accepted the Plan. Except for the obligations expressly imposed by the Plan, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, extinguishment, and termination of all such Claims against, liabilities of, Liens on, obligations of, and Equity Interests in the Debtors and/or Property of the Debtors. In addition, the Confirmation Order shall operate as a general adjudication and resolution with prejudice, as of the Effective Date, of all pending legal proceedings against the Debtors and its Property, as well as any proceedings not yet instituted against the Debtors or its Property, except as otherwise provided in the Plan.

As provided in Section 524 of the Bankruptcy Code, the discharge provided herein operates as an injunction against, among other things, the assertion of any Claim, Lien, or Equity Interest or the commencement of legal action or process against the Debtors or against the property of the Debtors. Furthermore, but in no way limited to the generality of the foregoing discharge and injunction, except for the obligations expressly imposed by the Plan, any Person or Governmental Unit accepting any Distribution pursuant to the Plan shall be presumed conclusively to have released the Debtors and successors and assigns of the Debtors, from any cause of action based on the same subject matter as the Claim or Equity Interest on which the Distribution is received. This release shall be enforceable as a matter of contract against any Person or Governmental Unit that acquires any Distribution pursuant to the Plan.

The creditors holding Allowed Secured Claims shall retain their the liens pursuant to the Confirmation Order and the Plan of Reorganization until paid in full in accordance with the terms of the Plan.  When the final payment contemplated under the Plan is made, the creditor shall release all of its liens and encumbrances on the respective Reorganized Debtors' property, and shall provide documentary proof thereof.

6.2     No Liability for Tax Claims.
Unless a taxing authority has asserted a Claim against any Debtors before the bar date or as Allowed under the Bankruptcy Code, no Claim of such authority shall be Allowed against the Debtors for taxes, penalties, and/or interest arising out of the failure, if any, of any Debtors to have filed any tax return, including, but not limited to, any income tax return in any prior year or arising out of an audit of any return for a period before the Petition Date.

6.3     Vesting.
Except as otherwise expressly provided in the Plan, on the Effective Date, the Debtors shall be vested with all of the Assets and Property of the Debtors, free and clear of all Claims, Liens, encumbrances, charges, and/or other interests of Holders of Claims or Equity Interests, and shall operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.

6.4     Retention and Enforcement of Claims or Interests.

Any rights or Retained Causes of Action or objection to any Claim under any theory of law, including, without limitation, under the Bankruptcy Code, accruing to any Debtors shall remain property of the Debtors pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. Confirmation of this Plan and entry of the Confirmation Order shall not (a) constitute an adjudication of any Retained Causes of Action or claim the Debtors may have against any parties, whether known or unknown, asserted or unasserted, contingent or unliquidated, or of the validity of any Claim against any Debtors regardless of whether such party accepts or reject this Plan or has filed a Proof of Claim in any Reorganization Case; (b) act as *res judicata* or collateral estoppel with respect to any Retained Causes of Action or other claims of the Debtors; (c) otherwise have any preclusive effect with respect to a claim or Retained Cause of Action that any Debtors have or may have prior to the Effective Date. In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in the Plan, the Debtors shall retain all Retained Causes of Action available to the Debtors and/or its Estate, and to the fullest extent allowable under applicable law. After Confirmation, the Debtors, and in its sole discretion, shall be entitled to pursue, compromise, or abandon any and all of the Retained Causes of Action.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

7.1.1 Assumption. Any Executory Contracts or unexpired leases that (a) have not been rejected by any Debtors with the Bankruptcy Court's approval on or prior to the Confirmation Date, and (b) are not the subject of a pending motion to reject on the Confirmation Date, shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been assumed by the Debtors subject to Sections 7.1.2 and 7.2 below. The Plan shall constitute a motion to assume such executory contracts and unexpired leases. Entry of the Confirmation Order shall constitute approval of such assumptions.

7.1.2 Rejection. Notwithstanding anything herein to the contrary, the Debtors may seek to reject certain executory contracts and unexpired leases that will be identified in a motion to reject the same pending on the Confirmation Date.

7.1.3 Reservation. Notwithstanding anything herein to the contrary, this Section 7.1 shall not apply to any executory contract or unexpired lease that is treated otherwise under the Plan.

7.1.4 Cure. At the election of the appropriate Debtor, any monetary default under any executory contract and unexpired lease to be assumed shall be satisfied pursuant to Section 365(b)(1) of the Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash on the Effective Date; (b) by payment of the default amount in equal quarterly installments commencing on the Effective Date and continuing for one (1) year with interest payable with the final installment(s) and with principal pre-payable at any time with no penalty or premium; (c) on such other terms as agreed to by the parties to such executory contract or unexpired lease; or (d) as determined by Final Order of the Bankruptcy Court. In the event of a dispute regarding the (i) the amount of any cure payments, (ii) the ability of the Debtor to provide adequate assurance of future performance under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving assumption.

7.2 <u>Damages Upon Rejection</u>.

The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Person or Governmental Unit seeking damages by reason of the rejection of any executory contract or

unexpired lease; provided, however, that such Person or Governmental Unit files a Proof of Claim with the Bankruptcy Court before the earlier of thirty (30) calendar days following the Confirmation Date or as provided under separate orders of the Bankruptcy Court. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as an Allowed General Unsecured Claim. The Plan shall constitute notice to Persons and Governmental Units that may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the Debtors shall have no obligation to notify such Persons and Governmental Units that the Confirmation Date has occurred.

## ARTICLE VIII
## RETENTION OF JURISDICTION

8.1     Jurisdiction.

Until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including that necessary to ensure that the purposes and intent of the Plan are carried out and to hear and determine all Claims that could have been brought before the entry of the Confirmation Order. Except as otherwise provided in the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtors and to adjudicate and enforce all causes of action that may exist on behalf of the Debtors. Nothing contained herein shall prevent the Reorganized Debtors from taking such action as may be necessary to enforce or prosecute any cause of action that the Debtors have or may have and that may not have been enforced or prosecuted by the Debtors, which cause of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein

8.2     General Retention.

Following Confirmation of the Plan, the Bankruptcy Court shall also retain jurisdiction for the purposes of classifying any Claim, re-examining Claims that have been Allowed for purposes of voting and determining such objections as may be filed with the Bankruptcy Court with respect to any Claim. The failure by the Debtors to object to or examine any Claim for the purposes of voting shall not be deemed a waiver of the rights of the Debtors to object to or re- examine such Claim, in whole or in part.

8.3     Specific Purposes.

8.3.1 To modify the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code;

8.3.2 To correct any defect, cure any omission or reconcile any inconsistency in the Plan, the Plan Documents, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan, the Plan Documents, and any other documents related thereto in the event the Effective Date does not occur as provided herein, so that the intended effect of the Plan, the Plan Documents, and such other documents may be substantially realized thereby;

8.3.3 To assure the performance by the Reorganized Debtors of their obligations to make Distributions under the Plan and the Plan Documents;

8.3.4 To enforce and interpret the terms and conditions of the Plan and the Plan Documents;

8.3.5 To enter such Orders including, but not limited to, injunctions as are necessary to enforce the title, rights, and powers of the Affiliated Reorganized Debtors;

8.3.6 To enforce and interpret the terms and conditions of the Plan Documents;

8.3.7 To hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtors or their Estate arising prior to the Effective Date or relating to the period of administration of the Reorganization Case;

8.3.8 To hear and determine all applications of compensation of professionals and reimbursement of expenses under Sections 330, 331, or 503(b) of the Bankruptcy Code;

8.3.9 To hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, or their respective officers, directors, stockholders, members, attorneys, financial advisors, representatives, and/or agents;

8.3.10 To determine any and all motions pending on Confirmation for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

8.3.11 To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

8.3.12 To consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtors or their Estate;

8.3.13 To determine all questions and disputes regarding title to the assets of the Debtors or their estate;

8.3.14 To consider, determine, and act on any dispute arising out of or in connection with the Class 6 Injunction and/or the Guarantor Debt;

8.3.15 To enter such Orders as are necessary to implement and enforce any other Orders entered in the Reorganization Case; and

8.3.16 To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

9.1     <u>Conditions to Confirmation</u>.

Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or has been waived in a writing executed by the Debtors and BankUnited. These Confirmation conditions are as follows:

9.1.1 Disclosure Statement. The Bankruptcy Court shall have approved the Disclosure Statement or waived the necessity of such approval in a Final Order.

9.1.2 Confirmation Order. The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order, and any other Order entered in conjunction therewith, in form and substance acceptable to the Debtors.

9.2     <u>Conditions to Effectiveness</u>.

The Effective Date shall occur on that day which is the first Business Day that is at least fifteen (15) days after the date of entry of the Confirmation Order. Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or has been waived in a writing executed by the Debtors:

9.2.1 Final Confirmation Order. The Confirmation Order (and such related Orders) shall have become a Final Order.

9.3    <u>Waiver</u>.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Plan shall not be binding on any party in interest unless and until each of the foregoing conditions to Confirmation and the Effective Date has occurred or has been waived in a writing executed by the Debtors.

# ARTICLE X
## ACCEPTANCE OR REJECTION OF PLAN

10.1    <u>Each Impaired Class Entitled to Vote Separately</u>.

Each Impaired Class of Claims or Equity Interests receiving a Distribution under the Plan shall be entitled to vote separately to accept or reject the Plan, except as otherwise provided in the description of the class treatment under Article 4.

10.2    <u>Class Acceptance Requirement</u>.

Consistent with Section 1126(c) of the Bankruptcy Code, and except as provided in Section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in the amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

10.3    <u>Cramdown</u>.

If any Impaired Class of Claims fails to accept the Plan by the requisite majority, the Debtors reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code, on the basis that the Plan is fair and equitable, does not discriminate unfairly with respect to any non-accepting Impaired Class and provides to the Holders of Claims in each Impaired Class property of a value, as of the Effective Date, equal to the Allowed Amount of such Claims, or that any Holder of a Claim or Equity Interest that is junior to such Claims shall not receive or retain any property on account of such junior Claim or Equity Interest.

# ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    <u>Revocation of Plan</u>.

The Debtors reserves the right to revoke and withdraw the Plan before the entry of the Confirmation Order. If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then, with respect to the Debtors, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, or any other Person or to prejudice in any manner the rights of the Debtors, or such Person in any further proceedings involving the Debtors.

11.2    <u>Headings</u>.

Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

11.3    <u>Due Authorization by Holders of Claims</u>.

Each and every Holder of a Claim who else to participate in the Distributions provided for herein warrants that such Holder is authorized to accept, in consideration of such Holder's Claim against the Debtors, the Distributions provided for in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed, or obligations undertaken, by such Holder under the Plan.

11.4    Time.

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

11.5    Transactions on Business Days.

If the Effective Date, or any other date on which a transaction may occur under the Plan, shall occur on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall occur instead on the next succeeding Business Day.

11.6    Payment on Distribution Dates.

Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall, instead, be made, without interest, on the next Business Day thereafter.

11.7    Requirement to Notify Affiliated Reorganized Debtors of New Payment and Provide Schedule. At least thirty (30) days prior to the due date of the first payment pursuant to the Confirmed Plan, all creditors holding Allowed Secured Claims shall provide the Reorganized Debtors with the amount for such payment pursuant to the Confirmed Plan of Reorganization, an amortization schedule consistent with the provisions of the Plan, and shall commence sending regular monthly statements to the Reorganized Debtors reflecting the balances owed pursuant to the Plan of Reorganization.  To the extent the creditor fails to provide the Reorganized Debtors with new statements or the amount of the new payments pursuant to the Plan of Reorganization, the Reorganized Debtors may elect to continue making payments in the amount of the adequate protection payment, or make payments pursuant to the Reorganized Debtors' best estimate of the Allowed Secured Claim.  In no event will the Reorganized Debtors be held to be in arrears for payments on a post confirmation Allowed Secured Claim if such creditor has failed to notify the Reorganized Debtors in the manner set forth in this paragraph.

11.8    Fractional Dollars.

Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollars (rounding up in the case of $0.50 or more and rounding down in the case of less than $0.50).

11.9    Unclaimed or De Minimis Distributions.

If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further Distributions under the Plan. De minimus Distributions of Cash or Property having a value of less than twenty-five dollars ($25.00) shall not be made.

If a Distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtors due to an incorrect or incomplete address for the Holder of such Allowed Claim, as to such Distribution, within ninety (90) days of the return of such Distribution the amount of Cash attributable to such Distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such Distribution and will not participate in any further Distributions under the Plan.

11.10    Modification of Payment Terms.

The Debtors reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Person or Governmental Unit whose Allowed Claim treatment is being modified.

11.11    Entire Agreement.

The Plan, including all exhibits and annexes hereto, sets forth the entire agreement and undertakings relating to the subject matter herein and supersedes all prior discussions and documents. No Person or Governmental Unit shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter herein, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

11.12    Confirmation Order.

In addition to the requirements set forth in the Plan, the Confirmation Order shall also ratify all transactions consistent with the provisions of the Plan and the Plan Documents effected by the Debtors during the period commencing on the Petition Date and ending on the Effective Date.

11.13    Further Authorizations.

The Debtors, if and to the extent necessary, shall seek such Orders, judgments, injunctions, and/or rulings that may be required to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

11.14    Exemption from Securities Laws.

Any New Stock to be issued under the Plan will be issued pursuant to the exemption from the registration requirements of the Securities Act of 1933 (and of equivalent state securities or "blue sky" laws) to the fullest extent permissible as provided by Section 1145(a) of the Bankruptcy Code.

11.15    Transfer Taxes.

The transfer of any Property pursuant to the Plan or the Plan Documents, or the making or delivery of an instrument of transfer under the Plan or the Plan Documents, shall not (and the Confirmation Order shall so provide), to the fullest extent permissible under Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, and/or other similar tax.

11.16    Recordable Order.

The Confirmation Order shall be declared to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

11.17    Governing Law.

Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of law thereof.

11.18    Severability.

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable either as to all Holders of Claims or Interests or as to the Holder of such Claim or Interest as to which the provision is illegal, respectively. Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.19    No Interest.

Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date is to be Allowed on any Claim.

11.20   <u>No Attorneys' Fees</u>.

No attorneys' fees or costs shall be Allowed or paid with respect to any Claim except may be specifically Allowed under Section 506(b) of the Bankruptcy Code and by a Final Order of the Bankruptcy Court.

11.21   <u>Consent to Jurisdiction</u>.

Upon default under the Plan, the Reorganized Debtors consents to the jurisdiction of the unit of the United States District Court for the Middle District of Florida, Tampa Division, known as the Bankruptcy Court for that District, or any successor thereto, and agrees that it shall be the preferred forum for all proceedings relating to such default.

11.22   <u>Setoffs</u>.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtors may, but shall not be required to, setoff against any Claim and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim that the Debtors may have against such Holder.

11.23   <u>Successors and Assigns</u>.

The rights, duties, and obligations of any Person or Governmental Unit named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Governmental Unit.

11.24   <u>Reservation</u>.

If the Plan is not confirmed by the Bankruptcy Court for any reason, the rights of all parties in interest in the Reorganization Case shall be reserved in full. Furthermore, any concession reflected herein is made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Reorganization Case shall be bound or deemed prejudiced by any such Concession.

11.25   <u>Property Dealt With Under this Plan</u>. All of the property of any kind in which the Debtors have a legal or equitable interest, including but not limited to real property, fixtures, equipment, contractual rights, receivable and accounts, personal property (both tangible and intangible) are being dealt with by this Plan.

11.26 <u>Notices</u>.

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested to:

If to the Debtor:

Attn: R. Jonathan Ramdhan
2060 West 21st

Jacksonville, FL 32209

With a copy to:
Robert D. Wilcox, Esq.
820 A1A North, Suite W-15
Ponte Vedra Beach, FL 32082


_____    2/27/2018
R. Jonathan Ramdhan          Date
RJRamdhan Group, LLC


_____    2/27/2018
R. Jonathan Ramdhan          Date
NRMT, LLC


_____    2/27/2018
R. Jonathan Ramdhan          Date
RJR Towing, LLC

## EXHIBIT 1 TO JOINT PLAN

### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

IN RE:

      **RJRAMDHAN GROUP, LLC,**           **Case No.:**    **3:17-bk-2241-JAF**
                                                    **Chapter 11**

        **Debtor,**

---

IN RE:

      **RJR TOWING, LLC,**              **Case No.:**    **3:17-bk-701-JAF**
                                                    **Chapter 11**

        **Debtor,**

**NRMT, LLC, fka Metro Towing**           **Jointly Administered with**
                                            **Case No.:**    **3:17-bk-702-JAF**

        **Debtor,**

---

### STIPULATION AND AGREEMENT OF PARTIES

      THIS CAUSE was submitted to mediation September 22, 2017, and the following stipulation and agreement was entered into:

      1.      The terms of this agreement shall be incorporated into the debtors' plans of reorganization, which the Holley parties agree to support and accept.

      2.      The debtors agree that the Holley parties shall have one or more secured claims with a total secured value of $1.2 million, to be paid according to the following schedule: equal payments based on a 30 year amortization at 6% per year with a balloon on the 120th month. The Holley parties shall retain liens to the extent they existed immediately before the Rjramdhan Group, LLC, petition date. Such payments shall become effective October 1, 2017 for all adequate protection (other than real estate taxes) payments due on or after September 22, 2017.

      3.      O. Linwood Holley shall be paid $16,240.00 on the Effective Date of the Group Plan.

      4.      Mr. Ramdhan shall personally guarantee all obligations agreed to under this stipulation.

5.      Each of the debtors may sell property subject to the Holley liens, with the proceeds to be paid to the lien holder. Vehicles may not be sold for less than trade-in value unless Holley consents.

6.      In the event the debtors file one or more bankruptcy petitions within sixty (60) months of the effective date of their respective plans, the Holley parties shall be entitled to stay in relief with regard to the property securing the Holley claims. The debtors agree that the Holley parties, in such an event, cannot be adequately protected.

7.      Each party shall pay their own fees and costs, and Holley shall not seek fees in the bankruptcies.

8.      The parties shall stipulate to the dismissal of the preference suit brought by Group against Holley. Holley and RJR Towing stipulate that the leases at issue in the adversary proceeding shall be considered secure purchase agreements.

9.      Holley will dismiss the pending lawsuit against Mr. Ramdhan without prejudice. Each party shall bear their respective costs and fees with respect to state court litigation.

10.     With regard to the vehicles, the debtors shall be required to maintain insurance in compliance with the applicable Florida statutes that immunizes a lessor from liability, and after the effective date of the plan, and title having been transferred, up to the fair market value of the vehicle.


THIS AGREEMENT BECOMES BINDING UPON THE PARTIES AND THEIR ATTORNEYS BY THEIR EXECUTION HEREOF.

Dated this 22nd day of September, 2017 at Jacksonville, Florida.


_____
Rjramdhan Group, LLC
Its Representative

_____
Lance P. Cohen, Esquire

_____
RJR Towing, LLC
Its Representative

_____
Robert D. Wilcox, Esquire

_____
NRMT, LLC f/k/a Metro Towing
Its Representative

_____
James Eidson, Esquire

_____
Onis Linwood Holley

_____
St. Johns Mortgage Management, Inc.
Its Representative

_____
Great Southern Peterbilt, Inc.
Its Representative

_____
**Mattox S. Hair, Esquire**
**Mediator,** Cert. No. 4080 CR
Florida Bar No. 0032828
1022 Park Street, Suite 201
Jacksonville, Florida 32204
Telephone: (904) 358-3580
Fax: (904) 358-0468

# EXHIBIT 2 TO JOINT PLAN

Exhibit 2

Trucks subject to Holley Parties' liens

`Unit K55005, 2005 U D truck, VIN: JNALC80H26AK55005
Unit K10065, 2011 U D truck, VIN: JNAL310H2BAK10065
Unit G580395, 2011 Dodge 5500, truck with wrecker body, VIN: 3D6WU7CL1BG580395
Unit A380307, 2011Landrover, Model R/R S/C, VIN: SALMF1E44CA380307
Unit H15056, 2012 U D 2000 truck, VIN: JNAL310HOCAH15056
Unit K15006, 2012 U D 1800 truck, VIN: JNAM310H3CAK15006
Unit K15013 2012 U D 1800 truck, VIN: JNAM310H0CAK15013
Unit H75012, 2009 U D 2000 truck, VIN: JNAMB81H69AH75012
Unit H15080, 2012 U D 2000 truck, VIN: JNAL310H8CAH15080
Unit H55320, 2006 U D 2000 truck, VIN: JNAMB80H96AH55320
Unit H55177, 2006 U D 2300 LD truck, VIN: JNALC80H76AH55177
Unit H60565, 2007 U D truck, VIN: JNAMB80H77AH60565
Unit K80103, 2010 U D 2300 LD, VIN: JNALCB1H7AAKB0103
Unit K15020, 2012 U D 2000 truck, VIN: JNAL310H3CAK15020

# EXHIBIT 3 TO JOINT PLAN

Equipment List

1 ea. CM 1100 monorail skive stations

1 ea. Marangoni cushion gum cutter SIN NR840107

1 ea. Manifold for vacuum system with 24 outlets (no serial number)

1 ea. Mntteuzzi Reinforced Vertical Enveloper SIN 301205

2 ea. Reconditioned CM 104 Tire Chambers SMC

1 ea. Reconditioned Olson 750 hauling rack

1 ea. Matteuzzi Truck Tire Builder with expanding hub 201/15 2003

1 ea. Model- lSNDTS Non-destructive tire inspection/repair/tester SIN 012703

1 ea. Rasp Lecardo 2500 Buffer+ SP.F. + B.M. with 3 flange sets SIN 12703 with electrical cabinet

1 ea. Ingersoll Compressor SIN JE 6323U99312

1 ea. Kaiser compressor *SIN* 1003

J ea. Kaiser Air Dryer *SIN*1097

1 ca. Tire inspector Repair Station SIN 1331105

1 ea. Model 11 Tire inspector/painter SIN 2251105/14ATCR

1 ea. Ringtreader 1000A with expanding hubs and long finger package

1 ea. Vacuum station for chambers, 2000 Matricoln# 85

4 ea. Tire lifts and cylinders

1 ea. Monorail system with 3-way switches, rollers, shocks, 2 4-way switches, 14 posts with 700 feet of monorail track.

144 ea. "J" hooks and rollers